232 A.2d 351.

Ida F. Rudolph *vs.* Nathan Feigelman *et al.*

JULY 21, 1967.

Present: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

POWERS, J. This is a suit in equity for an accounting and other relief predicated on allegations of mishandling or imprudent management and commingling of the complainant's property. It was heard by a superior court justice on bill, answer in the nature of a crossbill, and proof. It is before this court on the complainant's appeal from a final decree denying and dismissing her bill of complaint.

The record establishes that complainant and Nathan Feigelman, hereinafter called respondent, are sister and brother and were so related to Harry Feigelman who died intestate July 29, 1953. The complainant and respondent were the sole heirs and the latter was appointed administrator of the estate of his deceased brother.

It is not questioned that deceased at the time of his death, and for some years prior thereto, had been managing complainant's financial affairs and, following the death of her brother Harry, complainant made similar arrangements with respondent. The property so entrusted included, in addition to that which stood in her name, complainant's interest in the estate of her brother Harry. These latter assets consisted of a half interest in two corporations solely owned by the deceased, a half interest in the sale of Harry's law practice and a half interest in an undetermined amount of personal and real property.

After assuming responsibility for the management of his sister's finances, respondent caused three other corporations to be created and complainant received 50 per cent of the

stock in each such corporation. This made a total of five corporations in which complainant and respondent each held a 50 per cent interest. Further, respondent caused still another and dormant corporation to be activated as a service management corporation, handling his personal finances, complainant's personal finances, and those of the five corporations in which respondent and his sister each held half the stock. This service management corporation, however, was owned solely by respondent.

The record further established that complainant began to entertain misgivings about the way her affairs were being handled and, believing that respondent was improving his personal financial position while her own interest diminished, sought relief in equity by filing the instant bill of complaint November 20, 1957. It avers the fiduciary relationship assumed by respondent, specific transactions contrived by respondent for his own advantage and to the disadvantage of complainant, commingling of assets with resulting loss to complainant and a general breach of trust. The respondent answered, denied specific and general averments of such breach, averred interference, bad faith and harassment, for which he prayed damages, and asked compensation for his services, as well as ratification of his stewardship.

Represented by counsel at the commencement of her suit, the record discloses, however, that thereafter complainant consulted with a number of attorneys and engaged in discharging one after another, before there could be any meaningful accomplishment by any of them. We think it clear from the record before us and information which came officially to our attention as a result of related litigation with which complainant is involved, that the severance of relations with each of her attorneys evolved from her incapacity for intelligent communication and lack of constructive and meaningful cooperation attributable to a pronounced emotional disturbance.

In this connection it is significant to note that after the commencement of the instant suit, respondent brought about a voluntary receivership of the five corporations in which he and complainant were originally equal stockholders. The complainant interested herself in these receiverships and during the course thereof, the superior court appointed a guardian ad litem to protect her interest. In such capacity that officer filed a motion in this court to dismiss the instant appeal. The motion was premised on the obviously sincere conviction of the guardian ad litem that with the discontinuance of the instant appeal by the granting of the motion to dismiss, an extra judicial settlement of the dispute could be arranged to complainant's advantage. The complainant protested in person and at that time this court had ample opportunity to become cognizant of her disturbed state of mind.

Regardless of the potential advantages inuring to complainant's benefit were we to have granted the motion, no authority was cited nor could we discover any that conferred on a guardian ad litem in one cause authority to act on behalf of his ward in another. The motion was therefore denied. *Rudolph* v. *Feigelman,* February 7, 1966.

Returning to the appeal now before us, it appears that the bill of complaint and answer in the nature of a cross-bill were continued from time to time in the superior court by several justices thereof. Impliedly, from circumstances that cry out from the record before us, they were motivated by desires to afford complainant an opportunity to obtain counsel for the prosecution of so complex and involved a dispute as was raised by the pleadings and, in all probability, because of doubts that they entertained regarding her capacity to comprehend her problems within the limits applicable to the ordinary layman.

These continuances extended over a period of almost three years, and on September 19, 1960, the cause was again

ready for hearing. The superior court justice then presiding continued it to November 7, 1960, but admonished complainant that she should be ready to go forward on that date, with or without counsel. When the cause was reached on the day assigned, complainant was still not represented by counsel.

The superior court justice ordered the parties to go forward, but prefaced this order with a reminder to complainant that she had been given a number of continuances, that there seemed to be no reason for further delay and stated: "I could only appoint a guardian ad litem to represent you if you were under 21 years of ago [sic], or if you were of unsound mind, and since neither of those situations seems to apply, I know of no authority I have to appoint a guardian ad litem and no authority to appoint an attorney."

While the then sitting trial justice may have been, and in all probability was, unaware of complainant's incapacity to prosecute her suit pro se with even the ineptness characteristic of the ordinary layman, we think it clear from a review of the record compiled at the hearing in the superior court that to permit the hearing to stand as a proceeding which might properly be reviewed by this court would constitute a mockery of our judicial system.

The proceedings continued for some nine days, resulting in a transcript of almost 900 pages, the introduction into evidence of 74 exhibits by complainant and 12 by respondent, finally concluding with the arguments of the parties on December 1, 1960.

The jacket does not indicate that the trial justice rendered a written decision and the record contains no rescript. Neither is there any specific reference to the date of an oral decision. There is in the record, however, a letter from respondent's counsel, dated December 5, 1960, stating that he was enclosing a proposed decree, which appears to have been approved by the trial justice on December 6, 1960, and entered on December 8, 1960.

Since December 5, 1960, was a Monday, it must be assumed that the trial justice rendered his decision not later than Friday, December 2, the day after final argument. We attribute significance to this because, hampered as we are without the benefit of his decision, we must turn to his findings as set out in the decree to determine the grounds on which he granted the prayers for relief in respondents' crossbill while denying and dismissing the complainant's bill.

An examination of the decree discloses nothing of a definitive nature regarding the conclusions that he reached. Considering the insignificant period of time involved between the close of the hearing and the trial justice's decision, though, we can only conclude that his decision was markedly influenced, albeit subconsciously, by the impression complainant made in her rambling, disoriented and shotgun presentation of the cause.

Indeed, during the third day of the nine-day proceedings, the trial justice interrupted the complainant in the midst of a discourse rampant with non sequiturs saying: "We don't seem to be going in any particular direction. As if throwing any number of facts up into the air and saying to the Court, 'See if you can grasp all of these things and make head or tail out of it.'" He concluded, "* * * if I cannot understand what you are striving at, you are not going to prevail in the case."

Acknowledging that the trial justice was excessively diligent in attempting to preserve complainant's rights throughout the hearing, granting her an exception to every one of his adverse rulings as well as to her protestations, of which there are literally hundreds, we think it abundantly clear, in light of the dilemma personal to complainant, that no amount of zeal could have provided her a day in court within any real concept of that right.

It is our judgment therefore that justice requires that the decree entered December 8, 1960, be quashed and that

the case be remitted to the superior court for a new trial under the applicable provisions of the civil rules of procedure which became effective January 10, 1966.

Moreover, since it would be fruitless to remit the case for a new trial in which the complainant would again try her case pro se, we direct the superior court to consider the advisability of appointing a guardian ad litem for the conduct of such trial or for such other disposition as the superior court shall deem to be in the best interests of the complainant.

The complainant's appeal is sustained, the decree appealed from is quashed, and the case is remitted to the superior court for further proceedings in accordance with this opinion.

Motion for leave to reargue denied.

*Ida F. Rudolph*, pro se, for complainant.

*Sheffield & Harvey, Ward Harvey*, for respondent.